Master, the government is absolutely clear regarding its position on the jury instructions in this case. As it states on page 55 of the appellee's brief, there simply is no reason why a defendant cannot agree to act in a callous and wanton disregard of the consequences to human life is not an agreement to act, that is not an agreement to commit an act that would constitute the offense of murder if committed within the territorial jurisdiction of the United States, because such an act not resulting in death or not accompanied by an intent to kill does not constitute the offense of murder in the United States. May it please the court, counsel, my name is Bruce Nestor, it's my honor to stand before you today and represent Abdirahman Dawood. The jury instructions given by the district court were based upon an erroneous interpretation of the law and excused the government from having to prove the most essential element of the offense, that Mr. Dawood reached an agreement with others to kill such that Mr. Dawood had the specific intent to achieve the objective of the conspiracy, the unlawful killing of another human being. As noted in my opening remarks, the starting point for this position is the statute itself. The statute requires an agreement to commit an act that would constitute the offense of murder. Acting in callous and wanton disregard by itself, without the intent to kill or without a resulting death, is simply not such an act. The government is unable to point to a single case where the substantive offense of murder is fulfilled by an act that merely involves callous and wanton disregard for human life. Death is required. Now Congress certainly has the power to pass... So you're saying there's no second degree murder, leave aside the conspiracy, which is important. What you just said is there's no reckless act that causes a homicide that can properly be convicted of secondary murder. No, that's... Your Honor, if... That's what I heard you say. Then I wasn't clear. If a person acts with callous and wanton disregard and a death results, that is a substantive offense of second degree murder. But when we turn that into a conspiracy instruction, the government seeks to eliminate the requirement of either an intent to kill or a death. And so if someone who merely conspires to act in a callous and wanton disregard of human life has not by that alone committed an act which would constitute the offense of murder, the offense of second degree murder requires a result, death, for that act to constitute murder. You're not saying that a murder would have actually had to occur, are you? No. I'm saying that you can't conspire to commit second degree murder because obviously you don't need to achieve the objective of the conspiracy to be guilty of conspiracy. It's why you can't conspire to commit second degree murder because merely conspiring to commit a callous and wanton act is not an act that constitutes murder under the statute. You can conspire to act recklessly. Absolutely. I was thinking of, maybe it's not so common anymore, maybe it still is, teenage drag racing. And now if it's done, if there's a conspiracy to drive with total reckless disregard of everything, anything and everything, and it's on a rural road and a pedestrian or a passerby or another automobile is in a crash and someone dies, which was foreseeable for the recklessness of the conspiracy, is there a difference between doing it on a rural road and doing it in an urban neighborhood? From the standpoint of your argument that there can't be a conspiracy to commit second degree murder, it seems to me, or reckless murder, seems to me there is a difference. Well, the issue I don't think is before this court as to whether it's possible to conspire to second degree murder if you conspire to commit a callous and wanton act and a death results. That's not the issue before the court. And I suppose that might be different. It seems to me it is the issue. Well, I think there's no question, I guess, is that the issue? There's nothing in the jury instructions indicating that an element was that the government had to prove that a death resulted. The government's position is that mere agreement to commit an act with callous and wanton disregard is enough. And it appears in its Sandoval letter, the 28J letter recently submitted, the government submits for the first time that somehow 18 U.S.C. 956A is a different conspiracy than what we're accustomed to under 18 U.S.C. 371. In the very last paragraph, they seem to argue that 956A only focuses on conduct and that the result doesn't matter. Now, that argument is not raised in their briefs and I don't see anything in the statute that would indicate that. Moreover, Congress's use of the word act, that what you conspire to do is to commit an act that must constitute murder, clearly implies that the complete act by itself must be sufficient to constitute murder. And that requires the intent to kill. And that's really what is set forth by the North Dakota Supreme Court in the Borner decision, where they analyze whether it's possible to conspire to commit extreme indifference murder. Now... But the jury doesn't care about 371 versus 956A. The jury gets instructions. Correct. And what the government is trying to do is to justify the flawed instructions that were given on the basis that somehow this wasn't, this isn't a conspiracy with the same traditional elements of the 371. Doesn't that lead into the government's harmless error argument? Well... There was so much murder that was almost certain to result and did result in the conflicts that were supported. Well, certainly the government did a fine job at trial at proving that ISIS, like many organizations engaged in armed combat, kills people. What they didn't prove, and they didn't have to prove, was that Mr. Dawood had a specific intent to kill or an agreement with others to kill. And it... Isn't that implied when you join and fight with a paramilitary or terrorist group that's known to do that? Not necessarily. I mean, that's really a individual. I mean, that certainly could be an argument made by the government to a properly instructed jury. But the jury wasn't properly instructed in this matter and instead was encouraged to convict based on association. Because, I mean, in that courtroom, three weeks of listening and watching those videos, association with ISIL was a callous and wanton disregard for human life. But it wasn't tied to proof of an agreement to kill or an intent to kill on behalf of any of the defendants. And it's simply logically inconsistent that you can agree to commit... That you can agree to conspire to commit murder without intending to commit murder. And that's, again, that's what the Borner decision analyzes, and that's what Chagra and Croft, the Circuit Court of Appeals, they really get around this issue because the jury instructions and the charge and the indictment in those three cases was so complete in requiring an agreement with that specific intent to kill. That's not what we had in this case. You know, I appreciate that, but it seems to fly in the face that it's possible to get convicted of attempted second-degree murder without a killing, right? You can fire a firearm into a crowded room, wound someone grievously, and be charged with attempted second-degree murder, right? I think that's an issue. I don't think that's a decided issue in all jurisdictions. I mean, and I've never had that specific case on the federal bench, but I did on the state bench, and conviction lay in that case under North Dakota law. Didn't require a killing. And so the question is, what's the... What's so magical about the idea that you have to have a specific intent to kill someone as opposed to just to engage in an act which might logically result in the death of someone? Because Congress said in the statute, the act must constitute the offense of murder. Not part of the offense of murder, not some of the elements of the offense of murder. It must constitute murder. Acting in callous and wanton disregard does not. And I'd like to reserve the rest of my time for rebuttal, if I may. Mr. Kushner? Thank you. May it please the court, my name is Jordan Kushner, and I represent Mohamed Farah. I'm going to briefly touch on the arguments about the jury instructions as they apply to my client, and then I'm planning to discuss the issue of the failure to replace Mr. Farah's complete lack of communication with counsel and access to the evidence in his case. So the court had asked about harmless error, and I think it's indicative of... The facts on my client's case are that here are the acts that the government came up with that they said concluded that he was part of a conspiracy to commit murder. And that's that he watched videos of ISIS committing killings, and at some point came up with a phrase from the Quran which he said justified what happened, and at another time he laughed at the video and generally expressed his desire to join ISIS. This is not anything like overwhelming evidence of a conspiracy to commit murder. The jury needs to decide whether that's sufficient, and based on the instructions, it allowed the jury to conclude that merely a desire to join an organization that commits murder would be sufficient to make him guilty of conspiracy to commit murder, which is almost duplicative of the lesser offense of material support conspiracy to materially support a terrorist organization which is unchallenged on appeal. The jury is entitled to decide whether Mr. Farah, by wanting to join this group, had a specific intent to actually engage in murder. The government's own expert conceded that a lot of people who belong to or are part of ISIS don't engage in combat. They engage in other assignments, and whether Mr. Farah had a specific intent to kill was something that the jury needed to decide, and based on these instructions, they didn't have to decide that. Now I want to move into the issue about Mr. Farah's issues with counsel. Well, they weren't his issues. He had no control over them, but you know, about a month before trial, it came out that a paralegal working for one of his lead counsel was accused of making statements about jihad that influenced a witness in the case, and that he had had contact with family of co-defendants and encouraged them not to plead guilty. Based on that, Mr. Farah's lead counsel withdrew from representation a month before trial was scheduled, and he was left with his co-counsel, who had not been primarily, it wasn't clear that he had, it was really on top of all the evidence. It wasn't clear how much he had prepared. The district court expressed grave reservations at such a late stage, whether he would be ready on his own to just complete, to take over the case, and... I thought the court got explicit assurances from both counsel and Mr. Farah more than a month before trial. Yeah. It would be ready, and Mr. Farah was told by the court, you come to me if you have any questions, and the government's brief, is that accurate? At that time, Mr. Mohamed said that he was prepared to go forward, and he also said he thought he would need the help of another counsel, and he wanted to get someone else appointed because he thought it was too much to handle on his own, which is something he never followed up on. And Mr. Farah, who did say at that point he had complete confidence in his counsel, he did subsequently write a letter to the judge, or he instructed his counsel that he wanted him off the case, and his counsel then made a motion to get off the case. What Mr. Farah could not have predicted was that his counsel was never going to go over the evidence with him, and he didn't see the evidence in his case prior to trial, and didn't have any substantive discussions with his counsel about trial preparation. Mr. Farah's testimony or his statements were that his counsel only came and tried to encourage him to plead guilty, and discussed issues about him trying to get compensated for his work on the case. The main error that the district court made here was the failure to conduct a thorough inquiry. The case of United States v. Jones in 2011 has the operative language that when someone raises substantial issues about counsel, the district court has an obligation to conduct a thorough inquiry. And what happened here was Judge Davis was anxious to proceed due to the trial, and did not flesh out the facts. You had conflicting claims here. Mr. Murad Mohammed, the counsel at the time, claimed that he had gone over the case with Mr. Farah, but didn't provide details to back it up. Mr. Farah stated, no, I haven't seen the evidence in my case. I haven't had any substantive discussions with my attorney. He came to meet with me once to pressure me to plead guilty, and to have him help him make motions, his motions to get appointed as counsel so he could get compensated. I have no preparation for the case. Actually, didn't Mr. Farah testify that they met three or four times? I think it's on page three of the hearing transcript. Yeah, I think it's, I forget the exact number. I think there was a lack of, I think it might have been phone calls. He raised it only once between April 1st and May 9th. I just don't think that's accurate. I believe that, I think it's ambiguous. Mr. Farah at one point said once, I think Mr. Mohammed said that there were several phone calls, and I don't think it was ever really a request. And so his attorney should have had a record of that. He could have, should have been able to- How would you flush that out? His attorney- A few hours before trial's going to start. Well, his attorney should have a record of that. He should be able to look at his records and say, okay, I met with him on April 1st, April 15th, and April 22nd. His attorney was supporting the request, right? Well, he was supporting it, and he was not supporting it. And that's why, I mean, he did make the motion to be removed from the case. He did claim that he had communication with Mr. Farah, but did not provide details. And that's where the district court fell short, is that the district court didn't flush out the details. It had a predetermined- By doing what? By asking first- And he was in the trial for how long? Well, I think first he needed to get specifics. What dates did you meet with Mr. Farah? How long is that going to take, counsel? With a warning of trial? I think if the judge asked me, tell me what dates you met with your client and how long, I could have pulled up my timekeeping program and gotten the information within two minutes about, to tell the court exactly what dates and how long I met with my client. And I probably could have also then provided substance of the conversations at each meeting. I don't think if it was prepared, counsel, I don't think it's something that would have taken more than a few minutes to figure out. And I understand that it was on the eve of trial. The motion was made, I think, about a little bit less than a week before trial. Judge Davis made the decision, even though often he held hearings on short notice, he made the decision here not to take up the matter until just before trial, which I think is indicative of that he never really intended to take the motion seriously. Because if he was going to take these substantial issues seriously, he would have had the hearing before trial so that if there were prophylactic measures made, there would be some kind of advance notice. No doubt it would be, there's a potential here for inconvenience, but that's being balanced here against the fundamental Sixth Amendment right to competent counsel that Mr. Farra had. And that was not honored in this case, and that overrides the desire to expeditiously hold trial in a case that had taken a matter of years to try anyway. And I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Bruder? May it please the court, my name is Glenn Bruder and I represent Gulad Omar. I am going to confine my arguments this morning to the issue of the challenged jury instruction, but certainly if the court has questions about the other issues that I've raised in my brief, I'll be happy to answer those questions. Together with his co-appellants, Mr. Omar challenges the jury instruction with respect to the elements under Section 956A. It's our position that the district court essentially allowed the government to conflate two distinct cases, which is indeed a violation of Section 2339B, to sustain a separate murder conviction under Section 956. The government's defense to that challenge is essentially, excuse me, the defense position is that that instruction is inherently flawed because it confuses the two cases. By that, let's look at, to begin with, what exactly Section 956 criminalizes. It criminalizes a conspiracy to commit at any place outside the United States an act which would constitute the offense of murder. Well then we turn to 18 U.S.C. Section 1111, which defines what a murder is. And the very first sentence of that statute says, murder is the unlawful killing of a human being with malice of forethought. In other words, the object of any conspiracy that's made criminal under Section 956 needs to be a killing. It can't be a conspiracy to act with callous disregard to human life. The conspiracy has to be one to commit a killing. Unfortunately, the challenged instruction submitted by the judge essentially ignored these signposts and instructed the jury that if the appellants acted with callous disregard for human life, they could be convicted of murder on that and that alone, even if no death occurred and without reference to any killing being the object of the conspiracy. In other words, that instruction not only perverted Section 956, but conflated it entirely with Section 2339B. The approach... Has any case ever adopted that argument? Certainly Chun does not. That's basically what's cited and it's of no help at all. It's simply a district judge who chose to instruct the jury differently than Judge Davis did and got affirmed. Well, actually, Your Honor, I guess I disagree to the extent that I think Chun was helpful in at least a couple of respects. It flags the issue, no question about it, but I'm asking has any court ever accepted your argument that, since the statute invites reference to the definition, the federal definition of murder, the Eighth Circuit instruction for the crime of murder under that federal statute was given here and you're saying, well, that doesn't work for 956A because of the conspiracy overriding aspect and I agree that creates definitely an issue, but it doesn't carry me where you're arguing, frankly. Well, I think Croft and Chagra, which are cited at page six of my reply brief, also stand for that proposition, although they express it a bit differently. In Chagra, which was a conspiracy to kill a United States District Court judge, the court made it clear that in order to sustain a conviction, the government needed to show that Ms. Chagra entered the conspiracy with the objective of killing the judge, that that was, in fact, the core requirement for any conspiracy to commit murder. There's also a district court case, which I cited in my reply brief, but I have a feeling that, Judge Loken, that you're not going to be particularly swayed by a district court judge, but ... Essentially, in Chagra, excuse me, in that district court case, the Stafford case, the court made a very clear distinction and Holder essentially does the same thing, that you can conspire to provide material assistance to a foreign terrorist organization without necessarily conspiring to commit murder. The government's position in this case flips that on its head, and I'll give the government's attorneys credit for candor. They essentially say that if you offer to join ISIS, you are essentially conspiring to commit murder simply because of the dangerous propensities of that organization. Well, if that's the case ... It's not on the facts of this case. Well, Your Honor, it's not just on the facts of this case. If that's their analysis, then it seems to apply ... You've got the introductory ... The instruction begins with the elements of 956, which include murder, and then the court goes on to give the federal definition, the federal instruction, an improved instruction for how the concept of murder exists under federal law, but you put it all together and you've got willingly, maliciously conspiring to commit an act of murder. I just think you are quite properly, as an advocate, you're taking the instruction and expanding it way beyond the way a jury is likely to have understood it in the context of this trial, don't you think? Your Honor, I'm going to use up all of my rebuttal time answering this, but I'm going to because I think it's an important issue. Willingly does nothing to move this matter forward because after that, the judge says, or using the disjunctive, and he talks about a callous and disregard. In other words, he tells the jury, it can be one or the other. It can be willingly or it can merely be callous disregard for human life. The word willingly in that instruction gives the jury nothing and doesn't cure the problem. At this point, I'm not going to have a rebuttal. Thank you. May it please the court. Good morning, Your Honor. May it please the court and counsel. My name is John Daugherty. I'm an assistant U.S. attorney here in Minnesota. It was my privilege to represent the United States, one of the prosecutors who represented the trial of this case, and it's my privilege to be here this morning on appeal representing the United States. I should mention I'm joined at council table this morning by my colleague's assistant U.S. attorney, Andrew Winter, who is also on the brief and on the trial team, and assistant U.S. attorney, Lisa Kirkpatrick, who signed the government's brief. Your Honor, I will, of course, be willing and happy to answer any questions that the prepared remarks, if you will, to the issues that were raised by the defense, the jury instruction issue, and the issue of the withdrawal of counsel, attempted withdrawal of counsel on the morning of trial just before jury selection was going to begin. Defendant's claim really comes in two parts, that it's both logically and legally impossible to conspire to commit second-degree murder if the element of second-degree murder of malice of forethought takes the form of, and to quote the jury instruction exactly, an intent willfully to act in callous and wanton disregard of the consequences to human life. As Judge Loken was asking one of the defense attorneys, there is no federal appellate court that has ever held that this is legally impossible, and I will respectfully submit that the defendants this morning and in their briefs have given this court no good reason why this court should be the first to do so. I will also address Defendant Mohamed Farah's claim that the district court undertook too short an inquiry into his counsel's motion to withdraw, and the essence of my argument at that point will be, number one, that that was well within the discretion of the trial court, particularly given the timing, but second of all, that Mr. Farah has not identified with specificity any shortcomings in his trial counsel's performance or any prejudice that he suffered as a result of the denial of his counsel's motion. Beginning, Your Honor, with the mental state argument, the defendants all claim in their briefs that conspiracy to commit second degree murder is not a crime because in the words of Defendant Daud's brief, a person cannot specifically intend to commit a reckless killing. The argument misreads the law and it ignores the facts in this case. Jury instructions pass muster if taken as a whole and viewed in light of the evidence and the applicable law, they fairly and adequately submitted the issues in the case to the jury, and any alleged shortcoming in jury instructions is reviewed by this court for an abuse of discretion, and legal conclusions in the jury instructions are reviewed de novo. Recklessness, although used frequently by the defendants both in their briefs and in oral argument this morning, does not occur anywhere within the text of either 956A or 1111A. It also is not in the jury instruction that Judge Davis gave, which is the pattern jury instruction defining the federal crime of murder, which this court has approved the jury was instructed, were an agreement to commit an act outside the United States that would constitute the act of murder if committed inside the United States, the defendant knowingly and willfully becoming a member of that conspiracy, the defendant being within the jurisdiction of the United States at the time he conspired, and at least one overt act committed by at The mental state of murder is malice of forethought. That is not recklessness. Malice of forethought is intent, and that intent can be established in one of two ways, as the jury was instructed in this case. First, there can be an intent to kill, and there was overwhelming evidence in this case of the defendant's intent to kill. Second, malice of forethought can be proven by the prosecution by an intent, again an intentional act, to willfully act in callous and wanton disregard of the consequences to human life. So either way that the element of malice of forethought is proven, it requires intent, and any claim that second degree murder can be committed recklessly is not an accurate statement of the federal law of murder. Well, my problem with the instruction as worded is it does allow the argument that in this environment simply conspiring to join or support ISIS satisfies this definition. I, no, sorry. Not only does there not have to be a killing, but your act doesn't have to be linked to efforts to kill. The jury in this case, your honor, was carefully instructed by Judge Davis that they had to consider each count of the indictment separately, and that they had to return a separate verdict as to each count of the indictment. I don't think that gets at the issue. I think it gets at the issue when one compares the, I'm sorry. It doesn't solve the problem, for me at least. This is the most serious count, right? This is the most serious count. This is the top count in the indictment. The conflation argument, as I shorthand call it, certainly there are ways that one can provide material support to a terrorist organization which, if accompanied with an intent either to kill or to act in callous and wanton disregard of the consequences to human life, would constitute the crime of murder. But there are also- As counsel said, I haven't read the trial transcript. The way the government argued it is given the behavior of ISIS in this period, anything you did to support them, Fitz, the jury could find that it was in reckless, callous disregard of human life because you knew what they were doing. I understand the argument. I don't think that it carries the day in this case and here's why. Why does- Okay. Is that a- should you be able to be convicted of 956A in the government's opinion just from that proof? No. Short answer, no. What is there in this instruction that differentiates the conduct of these defendants from the hypothetical person in my- Sure. No, I understand. And the response, Your Honor, is that there are ways that one can provide material support to terrorist organizations that do not also lead to violating 956A. How can a jury sort them out from this instruction? Well, the jury in this case, as I say, was separately instructed on both. And on the murder instruction, they were told that they had to find either a specific intent to kill or an intent to act willfully in callous and wanton disregard. And that second part, one can provide material support to a terrorist organization not having it be in wanton and callous disregard. One can provide money. One can provide communications facilities. One can provide transportation. One can provide all sorts of things. The defendants in this case were charged with conspiring to provide themselves, personnel. That was the specific form that the material support took. The defendants in this case, the record is replete with their- Would that qualify? That would not qualify unless it was accompanied by a specific intent to kill, with joining a conspiracy by playing a support role in a conspiracy. If you knew the fighters are going to kill and you're there to feed them and make sure that they're well nourished for the killing that they're going to do, then yes. Your answer just said to me they should have cut that instruction off and dropped the last part. Instead of a specific intent to kill, which yes, I agree, that's clearly appropriate. Why do you go on and have a varkas and callous disregard taken from other contexts of 1111 without bringing that second part of the instruction back to the killing act? It's just out there by itself. Right. It means support of ISIS, I think, to many jurors would read it that way in these times. Okay. The second part of the instruction tells the jury only that to commit, this is one of the ways they can commit the crime of murder. They're charged with conspiring to commit murder. And the district court judge quite properly instructed them, here's what murder is under federal law. There's nothing, the word death or killing is not in that second part. It's in the first part. It is in the first part. And then we just go away from killing and death and we get to disregard, abstract or- I think that it is in- Theoretical disregard of human life, which a lot of driving on the highways these days, half the populace seems guilty of much of the time. Killing is in the second part because it talks about consequences to human life. Consequences to human life means death. That's the consequence that there is. The jury has instructed that because couldn't they draw a conclusion that consequences to human life could involve severe or grievous bodily injury, could involve any kind of injury? With respect, sir, no, I don't think that it could mean that because it talks about human life. It doesn't talk about injury. It doesn't talk about bodily harm. It talks about life. And that to me is life and death. And so I do believe that that is the instruction. Killing didn't have to result. Even if it resulted just in a little bit in serious injury, this definition is satisfied because it was reckless disregard of the consequences to human life. And the fact that it only resulted in serious injury this time doesn't mean you're less guilty. If I may, I have two responses to that. First of all, obviously, no conspiracy requires for liability to attach that the crime itself be completed. But over and above that, there was- All right, I'm not sure that would hold up across the spectrum of criminal law, but anyway, it's- For the most part. For the most part, and certainly in this case. And also in this case, there was evidence of killing having resulted. There were other individuals who had gone to Syria, Hanad Mohalim, Yusuf Jama, and there was evidence at trial that both of them had been killed fighting for ISIL outside a Syrian town called Kobani. It's in the high, I don't have the exact transcript site because I'm responding to a question, but there were people who were killed and who lost their lives as a result of being associated and conspiring with this group to travel to Syria and fight for ISIL. So if the, I don't think that evidence of actual death is required, but if it is required, there is evidence in the record of actual death resulting in this case of people who are dead. So the example that I have, I mean, I drive too, I take your point about the way people drive these days, but I think more, I think of the example of a group of people conspiring to hand partially loaded revolvers, Russian roulette, if you will, to a group of people and having them pull the trigger or pulling the trigger themselves. And then it becomes a fact question, is one bullet out of six chambers enough? Do you need two? Do you need three? But certainly everyone would say that someone who does that, if death results, is guilty of murder under the second prong of the malice of forethought instruction. And in this case, yes, traveling to Syria and there is definitely overlap in the proof between the two crimes. I think your example is good of why there can be conspiracy to commit second degree murder, but in those cases, hypothetically, you're going to have the six people who sat around with a revolver and pulled the trigger as many times as it took for one of them to die. Here we have a much more remote relationship between the acts of the defendants and the killing that was going on in the Middle East and the broader activities of the group they supported and the group they considered an enemy. I agree that there is some remoteness and I, not to transition too abruptly, but I think that that is the reason that the defendants' claims of either self-defense or imperfect self-defense fail. However, it's also worth pointing out, I believe, that the reason that there was some distance yet to travel for these defendants before they got to Syria and could carry out their plans was the alert work of law enforcement, which multiple times stopped members of this conspiracy at airports here and in New York who were on their way to Syria to join and fight for ISIL and to carry out this conspiracy. As I mentioned a few minutes ago, they didn't stop all of them. Some of them got overseas. So in sum then on this point, the jury was told that the charge was conspiracy to murder. They were then told, here's what murder is under federal law. It was black letter law from a jury instruction that, as I say, is no argument that this does not properly define the crime of murder at federal law. The jury was also instructed on material support. The jury was instructed to be careful and consider each count separately. I believe it worth pointing out in this context that the jury did return one not guilty verdict in this case. So they obviously, I believe, followed that instruction of separate consideration of each and every count. Did the defense submit their own proposed instruction? They did, your honor. What was it? From memory, I believe that the defense instructions sought a specific intent to kill. I'm sorry, I'm not calling them to mind on the spot here, but they are- Is the callous disregard portion, is that- They are in the record, your honor, and I would feel more comfortable referring you to the record than me trying to extemporize about it, because I'll probably get it wrong. So, okay, thank you. The district court also acted properly, your honor, when it denied defendant Farah's, before I move on. Let me just, you made a brief reference to the theory of defense instructions. Yes. I don't want to spend a lot of time on that, but the government, does the government think there's a combatant immunity defense to 956A? Yes, but not on the facts of this case. Is any case, has any- I'm not- I would address that, I would- I am not aware of a single case that even comes close to addressing that, your honor. When the government says combatant immunity requires that soldiers be combatants in a legitimate war, are those questions of fact or law? Those are mixed questions of fact and law, because- Do they go to the jury or don't they? They, oh- Does the jury get to, does the jury decide what's a legitimate war and who are soldier combatants? Yes, but there would have to be an instruction, of course, from the district court judge about the four criteria that are laid out in the- I don't know if he's ever tried to write that instruction. I haven't, and I'm not eager to try. Well, it seems to me that's very, that's a very troublesome. If you go into that, and in some situations, I mean, take the recent rebellion that resulted in South Sudan, and before that there was violent, there were combatants on both sides of this, some of whom were considered invaders, others were considered invaded. So an American citizen who conspired to join either side of that, would that have been, would that, they have been entitled to a combatant immunity defense? I am not at all familiar with the situation in South Sudan, but I would say- The Houthis and the Saudi Arabian forces fighting them this week. I would say, your honor, that like any affirmative defense, it's on the defense to come forward with a sufficient quantum of evidence to put the issue in play. Once the defense has done that, then it's a part of the trial. But it's interesting in this case that the defense says, as to the jury instruction, that their main argument is there was a lack of a specific intent to kill in the instructions. All right. And then raise an affirmative defense that would have to- But that seems to me to be, I'm not sure your brief solves that problem, but we'll move on. Okay. I would like to just briefly finish up on that point, your honor, which is that the defense, by criticizing the jury instruction, raised at least the intimation that if the government had to prove a specific intent to kill, there might not have been one, and yet at the same time argues for an affirmative defense that begins with, I mean, if they're in combat, they are affirmatively specifically intending to kill the enemy. And that's the only contradiction I would note. If you just look at this whole combatant immunity defense, I mean, some cases are easy. You join the Royal Canadian Air Force before the United States becomes involved in the Second World War. You're part of a military organization engaged in a war that's declared. It becomes a much narrower question when all of a sudden what you've got is some sort of paramilitary organization engaged in some sort of action against some state actors and also against other paramilitary organizations. Do you have any idea of what quantum of evidence would be necessary in order to go forward with the judge having the duty to instruct on it? I don't mean to dodge the question, but my response would be that on the facts of this case, the no reasonable jury could possibly have found combatant immunity. I mean, we cataloged in our brief the atrocities that are committed by ISIL. They are not, by any stretch of the imagination, a properly constituted professional fighting force. They are a terrorist organization. And by joining them, you do not become a soldier, you become a terrorist. Very good. Which in my mind, the My Lai Massacre. For which people were imprisoned. Should our soldiers have been prosecutable under 956A for that? They were prosecuted. I don't know what counts they were prosecuted on, but they were prosecuted. And that is one of the criteria that the Geneva Conventions established, which is that your army discipline you if you violate the laws and customs of war, which ISIL simply does not do. Any error in the jury instructions, and I don't for a moment concede that there was any, but if there was any error in the jury instructions, it was harmless beyond a reasonable doubt. As I said at the outset, the record in this case is replete with evidence of specific intent to kill. There's defendant Daoud in the car going to San Diego, being caught on tape saying, the first thing he's going to do when he gets to Syria is borrow an AK-47. He's going to shoot the lights out of that thing. He's going to, quote unquote, call a number of Shia Muslims. He is going to become a martyr even before he reaches training camp. Defendant Guled Omar watches a video about people shooting at tanks with rocket propelled grenades and says that he wants to be just like the man in that video, the tank hunter. He talks about wanting to kill Turkish security officials who he refers to as, quote, freaking pigs, unquote. He thought too that he would be a martyr. Defendant Mohamed Farah relished and attempted to theologically justify the burning to death of a prisoner of war and watched approvingly ISIL's mass executions recorded in government exhibit 178 on the prophetic methodology. There is absolutely no evidence of these defendants anywhere in the record of this case, even a scrap of evidence that these defendants were going to Syria to do anything but kill for ISIL, just as their companions who did make it out of the country apparently wound up doing. Your Honor, when he claims that it was error for Judge Davis not to allow him to withdraw on the morning of trial, Defendant Farah does not accompany that claim with any specifics, any examples of how he suffered prejudice as a result of that. He simply asserts, without citation to the record and without adducing any examples, and this is a quote from his brief, quote, cross-examination of government witnesses that often did more to help the government than Mr. Farah, Mr. Farah not presenting evidence on his own behalf and is not being able to make an informed decision whether or not to testify. One month before the motion to withdraw, Judge Davis engaged in a lengthy colloquy with both counsel and client about this, about going forward after Mr. Waniri had withdrawn as counsel. At that time, both were emphatic that they were ready to go. Mr. Muhammad, the attorney, did say he might consider enlisting the help of co-counsel. He apparently decided that that was not necessary. They spoke, as Judge Grundner pointed out, the record is three or four times. There were also an unknown number of telephone calls, and I think very importantly, Judge Davis told Defendant Muhammad Farah, if there are any get in touch with me because, and I quote, we've got to make sure you're adequately represented. And then on the morning of trial, counsel wants to withdraw and Mr. Muhammad Farah, the defendant, has not in any way been in touch with Judge Davis to let Judge Davis know that there's any dissatisfaction before coming into court that morning. There was no irreconcilable conflict here. There was a dispute over trial strategy, whether to plead guilty or whether to go to trial. Apparently, Muhammad Farah won that argument because he in fact did not plead guilty. There was no complete breakdown in communications because there were multiple meetings during that month, as well as telephone calls. As to access to discovery, Judge Davis had ordered and the computer and a hard drive in the jails where the defendants were confined so that the defendants could go and look at the evidence at any time that they pleased. They were not dependent upon their lawyers bringing the evidence to the jails for them to look at. There was therefore absolutely no abuse of discretion on these facts that would cause this court to second guess Judge Davis's decision not to allow withdrawal of counsel, literally while the jury panel was down the hall waiting to be brought into the courtroom. Your honors, I have about three minutes left. I'm happy to answer any further questions that the court might have. In the absence of any questions, however, I'll conclude at this time. Thank you very much. I know defense counsel have rebuttal time. You can pool it or you can take it individually. I leave that to you. I'll take my time now, your honor, to briefly address the questions that you Mr. Dawood did seek an imperfect self-defense instruction, which was perfectly appropriate when you're charged with a thought crime. What he asked for is he asked for the question to be submitted to the jury as to whether he had a belief that he would be a lawful combatant and not be committing unlawful killings. He submitted sufficient evidence to support the giving of that own witnesses who testified. They used to be co-conspirators before they became informants that they thought that they were going to go and serve as police, that they believe that the allegations of atrocities committed by ISIS for fabrications of the Western media and the government's own expert that said ISIS has a sophisticated propaganda machine that portrays itself as a government and a legitimate army. We're not saying any of that was true, but we're saying that was an actual even unreasonable belief that Mr. Dawood could have had based on the evidence. The question should have been submitted to the jury. It was not. In response to your question, Judge Grinder, Mr. Dawood did submit a proposed instruction. All he asked the court to do was to instruct the jury that conspiracy to commit murder requires proof that two or more persons reached an agreement or came to an understanding to unlawfully and malice of forethought kill another person. Now the court instead used the word murder, and that's really a crucial distinction. Murder is a legal term that encompasses the intent to kill or a killing that results from callous and wanton disregard. That's not appropriate in conspiracy. This instruction was appropriate because it substituted the factual word of killing for the legal term of murder, which encompasses both an intentional killing and a killing that is a callous and wanton disregard. Clearly, the jury could have been confused by these instructions. The government's position on page 55 of its brief is that mere agreement to commit an act that demonstrates a callous and wanton disregard for human life was sufficient for conviction. If the government believes that, clearly the jury could have believed that, meaning they did not have to find an intent to kill. They did not have to find an agreement to kill. Both Chagra and Croft are court of appeals cases that on the first surface appear to contradict our position, but take the position that that agreement to kill is a necessary part of a conspiracy to commit murder. Mr. Dawood is sitting in prison for 30 years because of the erroneous jury instruction in this case. His conviction should be reversed. Thank you, Mr. Minister. In response to the government's claim that there was harmless error because there was overwhelming evidence of intent to kill, the only evidence about Mr. Fara's response to ISIS was his approvingly watching ISIS propaganda videos, coming up with a Quranic explanation to justify the particular act and laughing in another video. The jury needs to decide whether that's sufficient to conclude that he actually intended to commit murder. That's a jury question and the jury wasn't able to answer that question based on the instructions which permitted them to infer just the mere act of deciding to join an organization was sufficient. On Mr. Fara's motion to withdraw from counsel, the government raises for the first time that Mr. Fara didn't demonstrate prejudice from the denial of the motion to withdraw. It's inappropriate to raise it at this time. Had they raised it in their brief, I would have extensively briefed that question in my reply and given specific examples of how Mr. Fara's trial counsel was unprepared for trial, how his cross-examination questions did more to help the government than they did to help Mr. Fara, about how Mr. Fara could have testified and helped himself if he had adequate consultation with counsel and subsequently I could have supplemented that with information about disbarment proceedings that are currently pending against Mr. Fara's trial counsel before the Minnesota Supreme Court for multiple acts of misconduct in terms of representation of his clients. The motion to disbar his counsel four days before trial wasn't submitted on the eve of trial. Judge Davis decided to hold the hearing on the eve of trial. Mr. Fara couldn't help the fact that he did found out that his client was inadequate right before trial because his counsel was only representing him alone for a month. That was the only time and so it was within that time period that Mr. Fara found that he did not have communication with his counsel. We don't know how many times they communicated. That could have been confirmed with his counsel records or the jail records that showed meetings or phone calls. It would not have taken long for the district court to find that information and that's where the district court failed by failing to conduct a thorough inquiry to determine if his counsel was really prepared to represent Mr. Fara and for that Mr. Fara deserves a new trial with counsel that's adequately prepared and communicates with him about the trial decisions. Thank you. Thank you Mr. Kushner. Mr. Bruder, I'll give you a minute since I took up your last minute. Thank you your honor. It gives me a chance to say the one thing I want to say which is the government takes the position that what's the big deal here? This is essentially a boilerplate Eighth Circuit instruction. As I addressed in my reply brief, it's not quite that simple. First of all, while it is based on a model Eighth Circuit jury instruction, the comments to that jury instruction make it very clear that it's to be used in a murder case where the accused is a principal. In this case, it's a conspiracy. It's not intended for that particular situation. The note itself says it needs to be modified if it's something other than a principal. In Johnson, this court approved it, that instruction, but that was a situation where Johnson was acting as a principal, not as a conspirator. So really the government's reliance on the fact that it was a boilerplate instruction, its prior approvals by the court are all meaningless in the context of this conspiracy case and the drafters recognized that it might need to be modified. Thank you. Very good. Thank you Mr. Bruder. Thank all of all counsel for a thoroughly prepared and well-argued cases. They are three separate cases, although they've been heard together this morning. They're important and we will take them under advisement and do our best with them.